Lori Jordan Isley
Joachim Morrison
David Solis
COLUMBIA LEGAL SERVICES
6 South Second Street, Suite 600
Yakima, WA 98901
(509) 575-5593

Adam J. Berger
Martin S. Garfinkel
SCHROETER GOLDMARK & BENDER
810 Third Avenue, Suite 500
Seattle, Washington 98104
(206) 622-8000

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BACILIO RUIZ TORRES and JOSE AMADOR, as individuals and on behalf of all other similarly situated persons,<br><br>            Plaintiffs,<br><br>      vs.<br><br>MERCER CANYONS, INC.,<br><br>            Defendants. | <u>CLASS ACTION</u><br><br>No. 1:14-CV-03032-SAB<br><br>MOTION FOR CLASS CERTIFICATION<br><br>1/14/2014<br>With Oral Argument: 11:00 a.m. |

## I.    INTRODUCTION

Plaintiffs request class certification of their claims on behalf of a proposed class of over 600 farm workers against Defendant Mercer Canyons, Inc. (Mercer) for violations of the Migrant and Seasonal Agricultural Workers Protection Act (AWPA), the Washington Consumer Protection Act (CPA), and Washington state wage laws.

MOTION FOR CLASS CERTIFICATION - 1

In 2013, Mercer imported foreign H-2A workers to fill a portion of its 2013 vineyard labor force. As a necessary counterpart to participation in the H-2A program, Mercer had an obligation to inform domestic workers about the jobs and failed to do so. Mercer also had an obligation to pay domestic workers performing the H-2A jobs the same $12 per hour it paid to foreign workers. Instead, Mercer failed to pay scores of domestic workers the full $12 per hour wages they were owed.

Mercer's acts and omissions impacted hundreds of domestic farm workers in Yakima's lower valley and beyond who showed up asking for work, but were never told there were available jobs. These jobs would have been especially attractive to domestic workers, as they paid $2.81 per hour above the state minimum wage and came with a guaranteed term from March to September 2013. Mercer's failures violated AWPA's statutory mandates to provide accurate and complete information and to pay farm workers their full wages "when due"; the CPA's prohibition on unfair and deceptive practices; and Washington laws requiring full pay for hours worked.

## II.    FACTUAL BACKGROUND

Participation in the H-2A program imposes obligations on employers to protect domestic workers which are largely incorporated in the Clearance Order, the document that contains the material terms and conditions of employment. *See*

MOTION FOR CLASS CERTIFICATION - 2

COLUMBIA LEGAL SERVICES
6 South Second Street, Suite 600
Yakima, WA 98901
(509) 575-5593

*Ex. 1*; 20 C.F.R. § 655.103. On February 4, 2014, the Washington State Employment Security Department (ESD) accepted Mercer's application seeking temporary labor certification, triggering Mercer's duty to cooperate with ESD to recruit domestic workers. *Ex. 2* at 41. The Washington Farm Labor Association (WAFLA) advised Mercer that it must give the job opportunities to walk-ins and to give all potential applicants a copy of the Clearance Order.[1] *Id.* On February 7, 2014, Mercer submitted its application (ETA Form 9142) to the United States Department of Labor (USDOL) stating its intent to advertise the jobs by word of mouth. *Ex. 4* at 51 & 55. On February 22, Mercer's application for temporary labor certification was accepted by the USDOL, thereby triggering Mercer's positive recruitment duties. *Ex. 5* at 61; 20 C.F.R. § 655.143(b)(2).

Mercer's Clearance Order, as well as its application to USDOL, incorporates the requirement to use no less than the normal recruitment efforts of non-H-2A agricultural employers. *Ex. 1* at 27; *Ex. 4* at 55; 20 C.F.R. § 655.154(b). Because word of mouth is perhaps the most common form of normal recruitment efforts to

---

[1] Mercer signed a contract with WAFLA to help navigate the H-2A process. *Ex. 3.* WAFLA acted as Mercer's agent for certain aspects of the process. Under the contract, Mercer had an "independent obligation to be knowledgeable of, and comply with, [the H-2A regulations]." *Id*. at 47.

MOTION FOR CLASS CERTIFICATION - 3

reach farm workers, Mercer had a duty to recruit by word of mouth consistent with its representation to governmental authorities that it intended to do so.

Mercer, in its Clearance Order, also assures that it will independently conduct positive recruitment and that the job opportunity is and must continue to be open to domestic workers through 50% of the work contract. *Ex. 1* at 27 (incorporating 20 C.F.R. § 655.135 (a),(c) & (d)). Mercer further specifically obligated itself to inform all "[j]ob seekers . . . of the terms and conditions of the job" listed in the Clearance Order. *Id.* at 24 & 28.

Finally, Mercer had two additional duties related to telling its own work force about the jobs. First, USDOL required Mercer, consistent with H-2A regulations, to contact former employees "by mail or other effective means" to "solicit their return to the job." *Ex. 5* at 63; 20 C.F.R. § 655.153. Second, Mercer was required to provide a translated copy of the Clearance Order to any domestic worker employed in vineyard jobs covered in the Order, "no later than on the day work commences." *Ex. 1* at 27 & 39; 20 C.F.R. §655.122(q).

In contrast, Mercer erroneously argues that it had no duty to tell job seekers, former workers who returned to work with Mercer in 2013, or its own workforce about the available H-2A jobs. *See* ECF No. 47 at 18-20. Mercer's practices demonstrate that it acted as if it had no duty to tell domestic workers about the H-2A jobs. Ryan Ayres, Mercer's CFO and the person responsible for ensuring

MOTION FOR CLASS CERTIFICATION - 4

Mercer complied with H-2A regulations, testified he was unaware of any word of mouth recruiting done by Mercer in 2013. *Morrison Decl.*, Ex. B at 19:23-20:2 & 32:7-9. He further admitted Mercer never told job seekers the dates vineyard work was available (*Id.* at 28:13-29:6) and Mercer staff never gave a copy of the Clearance Order to any job seeker. *Id.* at 27:5-7.

Garrett Benton, a former vineyard supervisor, observed that Mercer had a consistent practice of failing "to tell local farm workers who applied for work in 2013 about their right to apply for H-2A jobs." *Benton Decl.* at 2 ¶5. Mr. Benton left his job days after foreign H-2A workers arrived due to his belief that Mercer was violating H-2A laws. *Id.* at 2 ¶¶ 4-5. Despite being a vineyard supervisor, Mr. Benton was never instructed to spread the word amongst Mercer's workforce about the availability of work under the H-2A Order. *Id.* at 5 ¶19.

The testimony of Ayres and Benton regarding Mercer's omission are mirrored by the experiences of the putative class members. Proposed class representative, Jose Amador, and other domestic farm workers who drove to Mercer's office looking for work in 2013 consistently report they were not informed about $12 vineyard job openings. *Ex. 6,* at 69-71, 78-79, 86, 92, 94-95, 101, 106, 111, 116-117, 123, 128, 133, 140 & 145. Mercer routinely told job seekers no work was available and they should sign a callback list, but never called them back. *Id.* Mercer admits that it had no policy to call back such workers and

MOTION FOR CLASS CERTIFICATION - 5

did not instruct its staff to call workers back to offer them work under the Clearance Order.[2] *Morrison Decl.*, Ex. B at 30:23-25 & 31:13-18.

Mercer's own records corroborate this practice. Mercer's 2013 callback list contains 293 job seekers during the relevant time period. *Isley Decl.* at 4 ¶ 10. However, Mercer's initial and final recruitment reports, which Mr. Ayers testified contained *all* of Mercer's contacts with 2013 job seekers, only list eight workers from the callback list – less than 3% of those who sought work. *Id.; Morrison Decl.*, Ex. B at 25:24-26:5. Similarly, Mercer's initial recruitment report submitted to the federal government claims that all of its 2012 workers were contacted by mail "to solicit their return to this job," but, incredibly, no responses were received. *Ex. 7* at 151. Mercer has been unable to produce any letter to 2012 workers or evidence that any such letter was indeed sent, and Mercer's final recruitment report indicates only one 2012 employee was contacted. *Morrison Decl.*, Ex. B at 22:9-25:16 & 21:13-22; *Isley Decl.* at 4 ¶ 10.

---

[2] WAFLA program assistant Patricia Khan testified that Veronica Montoya, who was identified in the Clearance Order as Mercer's primary contact for domestic job seekers, provided WAFLA with a list of friends and family in Mexico that Ms. Montoya wanted to bring up to work under the H-2A program. *Morrison Decl.,* Ex. A at 10:15-13:4. WAFLA passed that list on to its recruiter in Mexico. *Id.*

MOTION FOR CLASS CERTIFICATION - 6

Even workers who were hired at Mercer were kept in the dark about $12 per hour vineyard jobs. Employed workers, including proposed class representative Bacilio Ruiz, state that Mercer never informed them about the available jobs. *Ex. 8* at 157-158, 165, 170, 176, 178, 185, 192, 197, 202 & 207.Although each of these workers performed some work under the Clearance Order in 2013, Mercer failed to provide them with a copy of the Clearance Order in English or Spanish, and its own records demonstrate that it failed to pay them the required $12 per hour for all work performed that was listed in the Order. *Id.*; *Isley Decl.* at 5-7 ¶¶ 16-21. Mr. Ayers admitted Mercer failed to pay workers performing Clearance Order work $12 per hour in March and early April. *Morrison Decl.,* Ex. B at 33:21-22, 34:7-24 & 35:15-20.

During the same time period that Mercer was turning away scores of domestic workers, it hired a Pasco-based labor contractor to bring in crews of domestic workers to do Clearance Order work. *Rivera Decl.* at 2 ¶¶ 7-8. Mercer never told the contractor they were using the H-2A program, never advised him the workers had to be paid $12 per hour, and never provided him with a copy of the Clearance Order. *Id.* at 2-3 ¶¶ 9, 10 & 14. Workers in those crews performed a variety of vineyard tasks covered by the Clearance Order, yet they were never provided with the Clearance Order and were largely paid minimum wage, not $12 per hour. *Id.* at 2-3 ¶¶11, 12 & 14; *Ex. 8* at 207; *Isley Decl.* at 5 ¶¶ 13-14.

MOTION FOR CLASS CERTIFICATION - 7

## III.  ARGUMENT

Plaintiffs' proposed "Inaccurate Information" class is defined as:

> All domestic migrant and seasonal farm workers who: 1) were employed as vineyard workers by Mercer Canyons in 2012; 2) sought employment at Mercer Canyons in 2013 between February 4 and June 15; or 3) performed vineyard work at Mercer Canyons between March 24 and September 15, 2013, and were not referred by WorkSource.

The claims of the proposed class are based on Mercer's consistent practice of failing to provide required information to domestic workers about its $12 per hour vineyard work that was available from March to September, including its failures to inform its 2012 vineyard workers, 2013 job seekers, and 2013 domestic vineyard workers about the jobs.

Plaintiffs also propose a subclass of 2013 workers who were not fully compensated for vineyard work performed under the Clearance Order. The "Equal Pay" subclass would include all domestic farm workers who performed work under the Clearance Order, but were paid less than the $12 per hour required by law for that work.

## A.  Both Classes Should Be Certified Under Rule 23(a) and 23(b)(3).

A class action must satisfy the requirements of Fed. R. Civ. P. 23(a) and at least one of the requirements of Fed. R. Civ. P. 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011). Plaintiffs' class allegations meet all of Fed. R. Civ. P. 23(a) and 23(b)(3) requirements.

MOTION FOR CLASS CERTIFICATION - 8

1.    **The Class Is So Numerous Joinder Is Impracticable.**

Fed. R. Civ. P. 23(a)(1) requires plaintiffs to show the class is so numerous that joinder is impractical. "[I]mpracticability does not mean impossibility; rather, the inquiry focuses on the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Est., Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). There is a presumption that any class of more than 40 individuals satisfies Rule 23(a)(1) on size alone. *See Jordan v. Los Angeles County,* 669 F.2d 1311, 1319 (9th Cir.1982), *vacated on other grounds by County of Los Angeles v. Jordan,* 459 U.S. 810 (1982).

Plaintiffs have identified 602 individuals who were not provided accurate information in the recruitment and hiring process. *Isley Decl.*, Ex. A, & at 2-5 ¶¶ 3-6, 11 & 15. For the Equal Pay class, Plaintiffs have identified over 200 workers who were not paid $12 per hour for all vineyard work performed under the Clearance Order. *Id.*, Ex. B, & at 5-7 ¶¶ 16-23. Accordingly, Plaintiffs have established numerosity for both the class and subclass.

2.    **There Are Questions of Law or Fact Common to the Class and Common Questions Predominate.**

Because there is substantial overlap between the Rule 23(a)(2) commonality and the Rule 23(b)(3) predominance tests, *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010), Plaintiffs address both tests

MOTION FOR CLASS CERTIFICATION - 9

here to avoid repetitious legal and factual arguments.

Fed. R. Civ.P. 23(a)(2) requires that plaintiffs show "questions of law and fact common to the class." "[C]ommonality only requires a single significant question of law or fact." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir.2012). "[A] class meets [the] commonality requirement when the common questions it has raised are 'apt to drive the resolution of the litigation,' no matter the number." *Id.* (citations omitted). Whether a question will drive the resolution of the litigation depends on the nature and elements of the underlying class claims. *Id.*

Rule 23(b)(3) requires that identified common questions "predominate" over individualized questions. *See Wolin*, 617 F.3d at 1172 ("While Rule 23(a)(2) asks whether there are issues common to the class, Rule 23(b)(3) asks whether these common questions predominate."). Although Rule 23(a)(2) and Rule 23(b)(3) both address commonality, "the 23(b)(3) test is 'far more demanding,' and asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' " *Id.* As with the commonality test, the Court's inquiry begins with the elements of the asserted cause of action. *Erica P. John Fund, Inc. v. Halliburton*, 131 S.Ct. 2179, 2181 (2011).

MOTION FOR CLASS CERTIFICATION - 10

a) Inaccurate Information Class

The common and predominant question for the Inaccurate Information class is whether Mercer had a consistent practice of failing to tell domestic workers it had vineyard work from March to September that paid $12 per hour. Plaintiffs' evidence amply demonstrates the existence of that practice. *See supra* Section II – Factual Background. In fact, Mercer's arguments on summary judgment present a classwide legal issue as to whether Mercer had a duty to inform class members of the available work. *See* ECF No. 47 at 18-20.

Plaintiffs pled overlapping federal and state law claims for this class. ECF No. 1 at 11-12 ¶¶ 41 & 42. The federal false or misleading AWPA claim, pursuant to  29 U.S.C §§ 1821(f) or 1831(e), requires Plaintiffs to prove that Mercer (1) knowingly; (2) provided false or misleading information; (3) concerning the terms, conditions, or existence of agricultural employment; (4) which (truthful) information was required to be disclosed under § 1821(a) or 1831(a). A grower's failure to disclose information related to an H-2A clearance order is actionable under AWPA. *Vega v. Nourse Farms, Inc.*, 62 F. Supp. 2d 334, 346 (D. Mass. 1999) ("Silence, in many circumstances, can be even more misleading than direct misrepresentations."); *see also Perez-Farias v. Global Horizons, Inc.,* No. CV-05-3061-AAM, 2007 WL 2041973, at *6 (E.D. Wash. July 11, 2007) *aff'd in part,* 499 F. App'x 735 (9th Cir. 2012) (failure to disclose transportation benefit in Clearance

MOTION FOR CLASS CERTIFICATION - 11

Order was false or misleading under AWPA; damages upheld on appeal); *Clarke v. Gardenhour Orchards, Inc.*, No. JH-84-4419, 1987 WL 48234 (D. Md. July 23, 1987) (grower violated AWPA's false or misleading provision by failing to disclose availability of housing and work listed in Clearance Order).

The state law CPA claim requires Plaintiffs to prove five elements: (1) an unfair or deceptive act or practice; (2) in trade or commerce; (3) an impact on the public interest; (4) an injury to each plaintiff in his or her business or property; and (5) causation. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 53, 533 (Wash. 1986). The "act shall be liberally construed that its beneficial purposes may be served." RCW 19.86.920.

To meet the first prong, a plaintiff need only show that the practice had the capacity to deceive a substantial portion of the public. *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 894 (Wash. 2009). This test is met where a representation, omission, or practice is "likely to mislead a reasonable consumer." *See id.* at 895. "[K]nowing failure to reveal something of material importance is 'deceptive' within the CPA." *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 170 P.3d 10, 18 (Wash. 2007).

The predominant questions with respect to both AWPA and the first prong of the CPA claim focus on Mercer's conduct and are common to the class. For both claims, the fundamental liability question is whether Mercer failed to meet its

MOTION FOR CLASS CERTIFICATION - 12

obligations to tell all "[j]ob seekers" about "the terms and conditions of the job" listed in the Clearance Order. *Ex. 1* at 24 & 28. As discussed above, this question can be answered for the whole class by proof of Mercer's consistent failure to reveal materially important information - that there were vineyard jobs available from March through September paying $12 per hour - to the proposed class.

Similarly, the questions of whether Mercer's conduct was in "trade or commerce" or affected the "public interest" within the meaning of the CPA are common to the entire class, and there is no reasonable argument that the answer to these questions would differ from one class member to another.

As to the remaining injury and causation prongs, courts have certified CPA class actions under Rule 23(b)(3) in cases where the plaintiffs "have primarily alleged omissions." *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wash. 2007) (citing *Binder v. Gillespie,* 184 F.3d 1059, 1064 (9th Cir.1999)). In those cases, proof of the omissions was not based upon information each class member received, but on what the defendant allegedly concealed. *Id.; see also Pierce v. NovaStar Mort., Inc.,* 238 F.R.D. 624, 629-30 (W.D.Wash.2006) (proof of reliance not necessary to satisfy causation element under Washington's CPA). The Washington Supreme Court has "firmly rejected the principle that reliance is necessarily an element of the plaintiff's [CPA] case." *Schnall v. AT & T Wireless Servs., Inc.*, 259 P.3d 129, 137 (Wash. 2011).

MOTION FOR CLASS CERTIFICATION - 13

The Ninth Circuit's decision in *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087(9th Cir. 2010), is also instructive. There, the court reversed a Hawaii district court's refusal to certify a consumer class action based on lack of commonality as it ruled each plaintiff would have to prove individual reliance as to why they purchased annuity investments. *Id.* at 1093.The Ninth Circuit rejected the need for individual inquiry in a failure to disclose case:

> These plaintiffs base their lawsuit only on what Midland did not disclose to them in its forms. The jury will not have to determine whether each plaintiff subjectively relied on the omissions, but will instead have to determine only whether those omissions were likely to deceive a reasonable person. This does not involve an individualized inquiry.

*Id*. Requring individual inquiry would effectively insulate companies who omit material facts from their communications with the public, because it would inevitably lead to speculation about what individuals would have done had they been provided complete and accurate information. Because Washington uses the same "capacity to deceive" standard, individual reliance determinations also are not required under Washington's CPA, and do not create individualized questions that would defeat class certification.

In sum, the Inaccurate Information Class proposes a common question, the answer to which will drive the resolution of both the AWPA and CPA claims – did Mercer have a consistent practice of failing to tell domestic workers it had

MOTION FOR CLASS CERTIFICATION - 14

COLUMBIA LEGAL SERVICES
6 South Second Street, Suite 600
Yakima, WA 98901
(509) 575-5593

vineyard work from March to September that paid $12 per hour? Because this question predominates across the class, the class is sufficiently cohesive to warrant adjudication of these claims through class representation.

   b) Equal Pay Subclass

   The Equal Pay subclass also involves overlapping federal and state law claims. EFC No. 1 at 12 ¶¶ 43 & 45.[3] AWPA and Washington wage laws make it unlawful to fail to pay workers the wage rates they are entitled to by statute or contract. 29 U.S.C §§ 1822(a) & 1832(a); RCW 49.52.050(2). The elements under both statutes are virtually identical. AWPA requires agricultural employers to "pay the wages owed to such worker when due." 29 USC §§1822(a) & 1832(a). The Washington Wage Payment Act makes it unlawful for employers to "wilfully . . . deprive the employee of any part of his or her wages [by paying] . . . a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract." RCW 49.52.050(2).

   Mercer's own records demonstrate putative class members were not paid $12 per hour for all work performed under the Clearance Order. *Isley Decl.* at 5-7 ¶¶ 16-21. Similary, Mercer's labor contractor admits workers supplied to Mercer

---

[3] On November 3, 2014, Plaintiffs advised Defendant that they intend to dismiss the CPA claim alleged on behalf of this subclass. *See id.* at ¶ 44.

MOTION FOR CLASS CERTIFICATION - 15

COLUMBIA LEGAL SERVICES
6 South Second Street, Suite 600
Yakima, WA 98901
(509) 575-5593

were not paid $12 per hour and records and invoices demonstrate they performed work covered by the Clearance Order. *Rivera Decl.* at 2-3 ¶¶ 11-12; *Isley Decl.* at 5 ¶¶ 13-14. Therefore, the common questions are whether this work was covered by the Clearance Order and whether Mercer had a practice of willfully withholding wages by failing to pay these workers $12 per hour in violation of state and federal law. Because these questions can be answered for each class member from Mercer's and its contractor's records there are no individualized questions that inhibit class treatment of these claims.

### 3. The Claims of the Class Representatives Are Typical of the Class.

Fed. R. Civ. P. 23(a)(3) requires that the claims or defenses of the named representatives be typical of the claims or defenses of the class to ensure those interests are aligned. Typicality is met if the representative plaintiffs' claims arise from the same practice or course of conduct as those of the class members. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir.2011); *see also De La Fuente v. Stokely-Van Camp*, 713 F.2d 225, 232 (7th Cir. 1983) (disclosure and recruitment practices sufficiently typical of class of farm workers).

a) <u>Inaccurate Information Class</u>

Plaintiff Amador went to Mercer's main office on March 19, 2013 to inquire about work and was never told that $12 per hour vineyard jobs were available. *Ex. 6* at 69-71. Plaintiff Ruiz was employed by Mercer in 2013, but was never told there

MOTION FOR CLASS CERTIFICATION - 16

was a $12 per hour job from March through September available for him. *Ex. 8* at 157-158. Neither received any written information from Mercer related to the Clearance Order. *Ex. 6* at 70; *Ex. 8* at 158. Thus, their inaccurate information claims arise from Mercer's alleged common course of conduct, and are typical of those of the proposed class.

    b) <u>Equal Pay Class</u>

Plaintiff Ruiz is similarly situated to the members of the proposed Equal Pay subclass because he performed vineyard work for Mercer in 2013 but was not paid $12 an hour for all such work. *Isley Decl.* at 6 ¶¶ 19-20. Because the action is based on Mercer's course of conduct which is not unique to the named Plaintiffs and resulted in the same or similar injuries to all class members, the class representatives' claims meet the "typicality" requirement of Fed. R. Civ. P. 23(a).

**4.    The Representative Parties Will Adequately Protect the Class**.

The final prerequisite, Fed. R. Civ. P. 23(a)(4), requires the resolution of two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011)(citation omitted).

There is no evidence of conflicts between the class representatives or counsel and the proposed class. Representative Plaintiffs Amador and Ruiz understand the

MOTION FOR CLASS CERTIFICATION - 17

claims in the case and the need to think and act on behalf of class members, as well as follow the orders of this Court. *Ex. 6* at 69; *Ex. 8* at 157. Plaintiffs' attorneys have lengthy track records representing workers in class action litigation and will vigorously prosecute the action on behalf of the class. *Decls. Isley, Morrison, and Garfinkel.* The class representatives and counsel will fairly and adequately protect the interests of the class.

### 5.    The Remaining Criteria of Fed. R. Civ. P. 23(b)(3) Are Also Satisfied.

Plaintiffs also meet the superiority requirements of Rule 23(b)(3). These criteria are:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class.

Fed. R. Civ. P. 23(b)(3).

With respect to the first criterion, there is no evidence or reason to believe that any of the members of the proposed classes of farm workers have a strong interest in initiating and independently controlling their own individual actions. *See Saucedo v. NW Management and Realty Services, Inc*., 290 F.R.D. 671, 685 (E.D. Wash. 2013); *see also Rodriguez v. Carlson*, 166 F.R.D. 465, 479 (E.D. Wash. 1996). Given their limited English skills, financial resources, and understanding of the legal system, it is

MOTION FOR CLASS CERTIFICATION - 18

unlikely that individual class members would pursue these claims absent class certification. *See id*; *Leyva v. Buley*, 125 F.R.D. 512, 518 (E.D. Wash. 1989).

As to the second and third elements, there is presently no other litigation regarding this controversy commenced by members of the class and it is in the interests of all parties to concentrate the litigation in the Eastern District of Washington.

As to the final element, there do not appear to be any substantial difficulties in managing this particular class action. Courts recognize that AWPA statutory damages, at issue in the claims by members of both classes, are not dependent on proof of actual injury; therefore individual proof of injury from each class member is not required. *Perez-Farias v. Global Horizons, Inc.*, 286 P.3d 46, 52 (Wash. 2012) *Rodriguez,* 166 F.R.D. at 479 (citing *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1306 (9th Cir. 1990)).

With respect to claims for actual damages by members of the Inaccurate Information class, Plaintiffs propose a calculation based on the wages earned by foreign H-2A workers for the CPA claim. For the Equal Pay sub-class, Plaintiffs seek the difference between the wage rate paid and $12 per hour that should have been paid. As the Ninth Circuit has recently noted in a wage and hour class action, "So long as the plaintiffs were harmed by the same conduct, disparities in how or by how

MOTION FOR CLASS CERTIFICATION - 19

much they were harmed d[oes] not defeat class certification." *Jimenez v. Allstate Ins. Co.,* 765 F.3d 1161, 1168 (9th Cir. 2014).

**B.    The Court Should Appoint Plaintiffs' Attorneys as Class Counsel.**

In appointing class counsel under Fed. R. Civ P. 23(g)(1), the court must consider: the work counsel has done in identifying and investigating potential claims; counsel's experience in handling class actions, complex litigation, and claims of the type asserted; counsel's knowledge of the applicable law; and the resources counsel will commit to representing the class. Here, counsel have experience handling class actions, including similar claims to those asserted here, and knowledge of the applicable law. *Isley Decl.* at 8-9 ¶¶ 27-30. Counsel have committed to expend the resources necessary to represent the class. *Id.* at 9 ¶ 32.

### IV.    CONCLUSION

Plaintiffs have satisfied all the requirements of Fed. R. Civ. P. 23(a) and (b)(3). This Court should grant Plaintiffs' Motion for Class Certification.

COLUMBIA LEGAL SERVICES
6 South Second Street, Suite 600
Yakima, WA 98901
(509) 575-5593

DATED this 24th day of November, 2014.

COLUMBIA LEGAL SERVICES

SCHROETER GOLDMARK &
BENDER

s/Lori Jordan Isley
Lori Jordan Isley, WSBA #21724
Joachim Morrison, WSBA #23094
David M. Solis, WSBA #46622
6 South Second Street, Suite 600
Yakima, WA 98901
Phone: (509) 575-5593, x. 217
Fax: (509) 575-4404
E-mail:lori.isley@columbialegal.org
joe.morrison@columbialegal.org;
david.solis@columbialegal.org

s/Adam J. Berger
Martin S. Garfinkel, WSBA #20787
Adam J. Berger, WSBA #20714
810 3rd Ave Suite 500
Seattle, WA 98104-1657
Phone: (206) 622-8000
Fax: (206) 682-2305
E-Mail: berger@sgb-law.com;
garfinkel@sgb-law.com

MOTION FOR CLASS CERTIFICATION - 21

# CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of November, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Lori Jordan Isley | lori.isley@columbialegal.org,<br>cheli.bueno@columbialegal.org,<br>elvia.bueno@columbialegal.org |
| Joachim Morrison | joe.morrison@columbialegal.org<br>rachael.pashkowski@columbialegal.org |
| David M. Solis | david.solis@columbialegal.org |
| Martin S. Garfinkel | garfinkel@sgb-law.com, cronan@sgb-law.com |
| Adam J. Berger | berger@sgb-law.com |
| Michael T. Reynvaan | mreynvaan@perkinscoie.com;<br>awells@perkinscoie.com; docketsea@perkinscoie.com |
| Aurora Rose Janke | ajanke@perkinscoie.com, bbuckley@perkinscoie.com,<br>docketsea@perkinscoie.com |
| Frederick Brian Rivera | frivera@perkinscoie.com, bbuckley@perkinscoie.com,<br>docketsea@perkinscoie.com |

And I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: None.

*Elvia F. Bueno*

Elvia F. Bueno

COLUMBIA LEGAL SERVICES<br>6 South Second Street, Suite 600<br>Yakima, WA 98901<br>(509) 575-5593