UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BACILIO RUIZ and JOSE AMADOR, as individuals and on behalf of all other similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>MERCER CANYONS, INC.,<br><br>Defendant. | 1:14-cv-03032-SAB<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

    Plaintiffs Bacilio Ruiz Torres and Jose Amador seek to represent a putative class in an action against Mercer Canyons, Inc., a farm south of Prosser, Washington. Plaintiffs allege Mercer Canyons, through the Washington Farm Labor Association, applied for, and was granted approval, to employ foreign workers under the federal H-2A program for vineyard labor from March 24, 2013 through September 1, 2013. The Clearance Order provided permission for Mercer Canyons to hire up to forty-four H-2A workers at $12 an hour and also allegedly required Mercer Canyons to notify vineyard workers who had worked in 2012 of the availability of employment. Purportedly, the Clearance Order required that Mercer Canyons inform job seekers of the terms and conditions of the vineyard jobs as submitted by Mercer Canyons to the Department of Labor.

**ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT** ~ 1

In March 2013, Plaintiff Amador and two family members drove to Mercer Canyons to inquire about employment opportunities. Amador was told that no work was available but that he could leave his information on a sign-in sheet and would be called if workers were needed.

Plaintiff Ruiz worked as a vineyard laborer for Mercer Canyons in 2012. He again worked as a vineyard laborer for Mercer Canyons from January through September 2013. Ruiz was mostly paid $9.88 per hour for his work. He alleges that he was paid that rate even for some work he performed identified by the H-2A clearance order as $12 per hour work. Ruiz claims he was never informed of the available H-2A positions.

Plaintiffs seek relief under the federal Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), the Washington Consumer Protection Act ("CPA"), and Washington state wage laws. Mercer Canyons seeks summary judgment as to all claims. ECF No. 47. Plaintiffs have sought class certification, ECF No. 51, but that motion has been stayed pending the outcome of Defendant's summary judgment motion. ECF No. 68.

## MOTION STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the burden of showing the absence of a genuine issue of fact for trial. *Celotex*, 477 U.S. at 325.

In addition to showing that there are no questions of material fact, the moving party must show that it is entitled to judgment as a matter of law. *Smith v.*

**ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT** ~ 2

*Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law if the non-moving party has failed to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## ANALYSIS

Plaintiffs assert claims under the AWPA, CPA, and state wage laws. Plaintiffs allege Mercer Canyon violated 29 U.S.C. § 1831(e) and § 1821(f) by making or causing to be made, false or misleading representations concerning the terms, conditions, or existence of employment by failing to inform local farm workers of $12 per hour vineyard laborer jobs in 2013. Further, Plaintiffs allege Mercer Canyons violated the AWPA by failing to pay $12 per hour wages when they were due to Ruiz and similarly situated putative class members. 29 U.S.C. § 1832(a) and § 1822(a). Plaintiffs also claim Mercer Canyons violated the CPA, RCW 19.86.020, by engaging in unfair or deceptive trade practices when it failed to inform local workers of the $12 per hour vineyard laborer jobs. Lastly, Plaintiffs allege Mercer Canyons had a practice of withholding wages owed to Ruiz and similarly situated putative class members in violation of RCW 49.52.050(2).

## AWPA

*Sections 1831 and 1821*

Plaintiffs claim Mercer Canyons violated § 1831(e) of the AWPA by misleading Plaintiffs and putative class members with regard to the existence of

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 3

forty-four job openings for full-time seasonal vineyard work at $12 per hour pursuant to the H-2A Clearance Order. Section 1831(e) states:

> No . . . agricultural employer . . . shall knowingly provide false or misleading information to any seasonal agricultural worker concerning the terms, conditions, or existence of agricultural employment required to be disclosed by subsection (a), (b), or (c) of this section.

Mercer Canyon argues for summary judgment on this claim by pointing to the end of the subsection. Mercer Canyons reads subsection (e) to mean it was not required to provide Plaintiffs with information about the jobs in question because subsections (a), (b), or (c) did not require such disclosure. Subsection (a) provides that agricultural employers provide certain information in writing "when an offer of employment is made" to any seasonal agricultural worker. Mercer Canyons argues that no job offer was made to Plaintiff Amador and therefore, it was not compelled to provide him with any information under § 1831(a) pursuant to § 1831(e). Mercer Canyons contends it did not need to provide any information under § 1831(b) because subsection (b) only exists to ensure certain notice is provided to workers actually employed by an agricultural employer. Plaintiff Amador was not actually employed by Mercer Canyons, and Mercer Canyons argues that Plaintiff Ruiz did not allege the absence of such notice. Section 1831(c) requires employers make, keep and provide certain pay roll information to employees. Again, Mercer Canyons argues this subsection cannot apply to Plaintiff Amador because he was never employed by Mercer Canyons and that Plaintiff Ruiz has not disputed the accuracy of the paystubs it provided him. Lastly, Mercer Canyon argues that Plaintiff Amador is not protected by the AWPA at all because he does not meet the definition of "seasonal worker" because he had not worked as one for twelve years.

     On its face, § 1831(e) could be read to mean that it only applies when one of subsections (a), (b), or (c) is also violated. In other words, an employer may not

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 4

provide misleading information when it makes a job offer (under subsection (a)) or may not provide certain misleading information to its own employees (under subsections (b) or (c)). Section 1831(e), could also be read to create an independent requirement for employers to provide the types of information required—with different triggers—as subsections (a), (b), or (c). That is, employers are prohibited from providing any false or misleading information listed in (a), (b), or (c) (such as place of employment, wages to be paid, and whether workers' compensation is required) to any seasonal agricultural worker. Looking only to the text of § 1831(e), both of these interpretations is eminently reasonable.

When a statute's meaning is ambiguous, as here, courts may resort to well-established methods of statutory interpretation. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 567 (2005). Here, several common interpretive tools indicate that Plaintiffs' reading of § 1831(e) is correct. First, the structure of the statute as a whole suggests that subsection (e)'s cross-reference to subsections (a), (b), and (c), is only to the categories of information, and not to the triggering conditions. Subsection (a) consists of two parts: a triggering clause, and a consequential clause or list. The triggering clause sets forth the conditions that must be met before the items in the consequential clause are required. These conditions include "upon request," "in writing," and "when an offer of employment is made." The consequential clause follows the colon and is a list of the information that is required to be provided, such as "place of employment," "period of employment," and "wage rates to be paid." Subsection (c) is similarly broken down into two discrete sections including a triggering clause and a consequential clause. Subsection (b) is not neatly split by a colon and a list, but still contains triggering conditions and information requirements. Subsection (e) contains triggering requirements that are inconsistent with the other subsections, indicating that the triggers in subsection (e) supplant the triggers from (a), (b), and

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 5

(c). For instance, subsection (a) refers only to written disclosures, whereas (e) is not limited to written form. Subsection (a) only applies to recruiters, while subsections (b) and (c) only apply to individuals or organizations who "employ[] any seasonal agricultural worker" whereas subsection (e) applies broadly, to any farm labor contractor, agricultural employer, or agricultural association, regardless of whether it employs or recruits seasonal agricultural workers. These inconsistencies strongly suggest the triggering requirements of subsection (e) supplant the triggering requirements from subsections (a), (b), and (c) rather than incorporating those triggers.

Next, Defendant's reading of § 1831(e) would render that subsection redundant. If possible, courts should give preference to an interpretation of a statute that gives effect to each word, and avoids surplusage. *Duncan v. Walker*, 533 U.S. 167, 174 (2001). The affirmative disclosure requirements in subsection 1831(a), (b), and (c), implicitly include the requirement that the information provided be truthful. If subsection (e) were meant only to "prohibit an employer from failing to provide the information required to be disclosed by subsection (a), (b), or (c)" as Defendant suggests, ECF No. 47 at 13, then it would be wholly superfluous, as those subsections already prohibit the failure to provide such information.

The AWPA's legislative history also supports Plaintiffs' interpretation of § 1831(e). The Committee Report sending the AWPA to the floor of the House of Representatives, in referring to § 1821(f), explicitly states "the duty to provide truthful information shall be a duty which runs . . . beginning with recruitment." H.R. Rep. No. 97-885, 97th Cong., 2d Sess. 16, *reprinted in* 1982 U.S.C.C.A.N. 4547, 4562. The Report further described the Committee's intention that the period of enforcement be viewed expansively and include "pre-employment discussion" between a worker and recruiter. *Id*. at 13. The AWPA was intended to protect seasonal agricultural workers to the same extent as migrant workers with

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 6

only a few differences. *Id.* at 19. One of the stated differences pertains to the information disclosure requirements of § 1831(a), that is, no affirmative written disclosure requirement applies to recruitment of non-day-haul workings until an offer of employment is made. *Id.* However, there is no difference described pertaining to the truthful information requirement of subsection (e).

Although the plain text meaning of 29 U.S.C. § 1831(e) is ambiguous, a review of the statute as a whole and of the legislative history demonstrates Plaintiffs' interpretation of the statute is correct. In other words, employers or recruiters have an affirmative obligation to provide written disclosures to non-day-haul workers, upon request, when an offer of employment is made. Employers and recruiters are always prohibited from providing false or misleading information of the kinds described in subsections (a), (b), and (c). Therefore, when a non-day-haul seasonal agricultural worker merely inquires about a job the employer is not obligated to provide him written information disclosures regarding such a job. But when an employer does actually provide false or misleading information concerning the terms of a job, including about the existence of a job, to such a worker, it has violated § 1831(e)—regardless of whether that information was provided in writing or by other means.

Defendant further argues that no false or misleading information was provided to Plaintiff Amador. Plaintiffs argue that Mercer Canyons did provide false or misleading information either by omission or by discouraging Amador from applying by insisting it would not hire local workers until after foreign workers arrived. Whether the information Mercer Canyons provided was "false or misleading" is a factual question to be determined by a jury when, as here, there is a genuine dispute of material fact as to exactly what information Mercer Canyons provided.

Defendant further alleges Plaintiff Amador's claims under the AWPA must be dismissed because he is not a "seasonal agricultural worker" as defined by the

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 7

Act. At the time in question, Plaintiff Amador was allegedly seeking seasonal agricultural work, but had not performed agricultural work in many years. The definition of "seasonal agricultural worker" and "migrant agricultural worker" as provided in 29 U.S.C. §§ 1802(8)(a) and (10)(a), uses the present tense "employed" in agricultural employment. The definition provided for "employ" further indicates a worker presently employed. 29 U.S.C. § 203(g). This extremely narrow definition, however, leads to absurd results under many sections of the AWPA. Accordingly, this Court will read the applicable definitions to include those seeking such work when the alternative reading would be absurd. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 527-28 (1989) (finding alternative meaning to a word to avoid absurd results) (Scalia, J., concurring); *Heppner v. Alyeska Pipeline Service Co.*, 665 F.2d 868, 872 (9th Cir. 1981) (discussing absurd results due to mistakes in drafting). In this case, the narrow definition of who gets protection as a migrant or seasonal agricultural worker would defeat the protections throughout the recruitment process (such as in § 1821(a)) and would negate the purpose of requiring truthfulness regarding the existence of employment (as in § 1821(f) and § 1831(e)). Therefore, because Plaintiff Amador was allegedly seeking employment as a seasonal agricultural worker, he is entitled to the protections of § 1831(e) as the non-movant at the summary judgment stage.

### *Sections 1822 and 1832*

Plaintiff Ruiz alleges that Mercer Canyons violated 29 U.S.C. § 1832(a) by failing to pay him all wages he was due. Specifically, Ruiz claims he performed "corresponding work" under the H-2A clearance order and was owed $12 per hour but was only paid $9.88 per hour for over 600 hours of corresponding work. Defendant moves for summary judgment on this point arguing that Ruiz admitted he was paid on time and that the information on his pay stubs was accurate. While arguing that Ruiz would not be owed $12 per hour for corresponding work, Mercer Canyons simultaneously claims it "paid him what he was owed, including

the higher H-2A rate" when applicable. ECF No. 47 at 15. Section 1832(a) does not concern itself with the source of wages owed. Just as a seasonal agricultural worker could use the AWPA if he were paid less than a statutorily defined minimum wage, he may use the AWPA to enforce other legal obligations of the employer regarding wage rate, including H-2A clearance orders. *See Doe v. D.M. Camp & Sons*, 624 F.Supp.2d 1153, 1168 (E.D. Cal. 2008) ("Wages may be defined by federal, state, and local laws. Failure by an employer to pay those wages constitute violations of AWPA"); *Perez-Farias v. Global Horizons, Inc.*, 2007 WL 2041973 *9 (E.D. Wash 2007) (finding AWPA violation for failure to pay Clearance Order wages). Ruiz disputes that he was paid at the proper rate for all corresponding work. ECF No. 70 at ¶34. This establishes a genuine dispute of material fact sufficient to defeat Defendant's motion for summary judgment as to this claim.

## CPA

Plaintiffs allege that Mercer Canyons violated the Washington Consumer Protection Act by engaging in the widespread unfair and deceptive practice of deceiving employees and potential employees of the availability of $12 per hour jobs. A CPA violation may be established with a showing of the following elements:

(1) an unfair or deceptive act or practice;
(2) which occurs in trade or commerce;
(3) that impacts the public interest;
(4) which causes injury to the plaintiff in his or her business or property; and
(5) the injury is causally linked to the unfair or deceptive act.

*Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn. 2d 299, 312 (1993). Mercer Canyons moves for summary judgment on the CPA claim primarily on the first, third, and fifth elements.

//
//
//

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 9

*Elements One and Two*

A plaintiff may establish the first two elements of a CPA claim by demonstrating that an unfair act or practice occurred in the conduct of trade or commerce that has the capacity to deceive a substantial portion of the public. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 785-86 (1986). Mercer Canyons argues that any alleged unfair or deceptive practice could not have deceived a substantial portion of the public because it only affected Amador, his family members that traveled with him to Mercer Canyons, and Ruiz. Plaintiffs allege a deceptive pattern or practice of deceiving both existing and prospective employees regarding the jobs available as a result of the Clearance Order. Mercer Canyons' effort to break this claim down into just a few discrete and isolated incidents is uncompelling. A deceptive practice may include acts of omission that are likely to mislead or fail to reveal something of material importance under the CPA. *See Panag v. Farmers Ins. Co.*, 166 Wn.2d 27, 50 (2009); *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wn.2d 59, 75 (2007). Here, Plaintiffs allege Mercer Canyons omitted information regarding the $12 per hour vineyard jobs to Amador and other similarly situated putative class-members, to Ruiz and other similarly situated putative class-members, and provided materially misleading job postings in newspapers. Actions that have the capacity to deceive the general labor pool, such as misleading job postings, may constitute a viable CPA claim. *Aziz v. Knight Transp.*, 2012 WL 3596370 *2 (W.D. Wash. 2012). Because a substantial portion of the public was eligible for the positions that Mercer Canyons allegedly misrepresented, it is not entitled to a grant of summary judgment based on the first two elements of the CPA.

//
//

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 10

*Element Three*

Whether the public interest has been impacted in a given case is a factual—not legal—determination. *Hangman*, 105 Wn.2d at 789. Different factors should be considered by the jury depending on whether the context involved a consumer or was "essentially a private dispute." *Id.* at 790. Because the instant case does not involve any consumer claims, the latter context is applicable here. In essentially private disputes, it "is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion" that constitutes a dispute that affects the public interest. *Id.* (internal citation omitted). Whether the acts were committed in the course of a defendant's business, if the defendant advertised to the general public, if the defendant actively solicited the plaintiff, and whether the plaintiff and defendant occupied unequal bargaining positions are factors to be considered in the determination of whether the public interest was impacted. *Id.* at 790-91. None of these factors is dispositive and the factors need not all be present to find public interest was impacted. *Id.* Here, Plaintiffs have no trouble establishing that a jury could find this element present. First, Plaintiffs propose a putative class of people who have been injured in the same fashion. *See* ECF No. 52. Second, it is undisputed the allegedly deceptive acts occurred in Mercer Canyons' course of business. Third, Mercer Canyons did advertise to the general public. *See* ECF No. 71, Ex. 2. Although this Court doubts Mercer Canyons' claim that Ruiz's theoretical ability to pursue a higher paying job elsewhere demonstrates that Plaintiffs occupied an equal bargaining position as the farm, such a finding is unnecessary to create a genuine issue of factual dispute regarding whether the public interest was affected. Similarly, although Mercer Canyons did not actively solicit the plaintiffs, a jury could reasonably rely on the other factors to determine that the public interest was affected. Therefore, Mercer

**ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT** ~ 11

Canyons is not entitled to a grant of summary judgment based on the third element of Plaintiffs' CPA claim.

*Fifth Element*

The last element of Plaintiffs' CPA claim that Mercer Canyons disputes is a causal link between the alleged deceptive practices and an injury. Mercer Canyons claims that Plaintiff Amador severed any causal link between the allegedly deceptive acts and any injury when he declined to leave his contact information on a sign-in form. If Mercer Canyons told Amador that few or no jobs would be available to local workers, as he contends, then the causal chain was not broken. If Amador was not allowed to apply for a job and was discouraged by Defendant's representations from leaving his information on a list—which Plaintiffs allege was not actually used to contact job-seekers—a causal link remains between the allegedly deceptive practice and Amador's purported injury.

Mercer Canyons claims that even if Plaintiff Ruiz knew about the $12 per hour jobs he has not shown he would have been able to obtain more $12 per hour work. Ruiz, for his part, claims that he would have been able to obtain an H-2A job had he been aware of the existence of those jobs. Plaintiffs have, at the least, presented facts that raise a genuine dispute as to whether a causal link exists between any deceptive practices and any injury suffered.

State Wage Claims

Mercer Canyons submits an argument that Plaintiffs' claims under Washington wage laws, specifically RCW 49.52.050, should be dismissed for the same reasons put forth for the 29 U.S.C. § 1832(a) claims. For the reasons previously stated, Plaintiffs have established a genuine dispute of material fact as to the wage claims and summary judgment is therefore not appropriate.

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 12

*Conclusion*

Viewing all disputed facts in the light most favorable to the Plaintiffs, Defendant's motion for summary judgment on all claims must be denied.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment, ECF No. 47, is **DENIED**.

2. Defendant shall file briefing responsive to Plaintiffs' Motion to Certify Class, ECF No. 51, within twenty-one days of this order.

3. Plaintiffs' reply, if any, shall be filed fourteen days after Defendant's response is filed.

4. Parties shall adhere to the Local Rules and previous orders of this Court, including ECF No. 34, for further briefing instructions.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 23rd day of January, 2015.



Stanley A. Bastian
United States District Judge

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ~ 13