UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BACILIO RUIZ TORRES and JOSE AMADOR, as individuals and on behalf of all other similarly situated persons,<br><br>         Plaintiffs,<br><br>  v.<br><br>MERCER CANYONS, INC.,<br><br>         Defendant. | 1:14-cv-03032-SAB<br><br>**CLASS CERTIFICATION ORDER** |

      This case is a good reminder that employers must take care to comply with all applicable employment laws and regulations. Here, the Court examines the interaction between the Agricultural Workers Protection Act ("AWPA") and the H-2A temporary worker program. The AWPA regulates the recruitment and employment of domestic seasonal and migrant agricultural workers. The H-2A program allows domestic employers who meet specific regulatory requirements to bring foreign nationals to the United States to fill temporary agricultural jobs.

      Mercer Canyons, Inc. hired the Washington Farm Labor Association to help it pursue H-2A workers for the 2013 season. Mercer Canyons was hoping to avoid a possible labor shortage. The Department of Labor approved Mercer Canyons'

CLASS CERTIFICATION ORDER ~ 1

H-2A application and issued a Clearance Order approving forty-four workers for a period from March 24 to September 1, 2013.

Plaintiffs contend that participation in the H-2A program imposes certain obligations on employers to protect domestic workers. These obligations include a positive recruitment period when Mercer Canyons was required to hire any qualified worker who was either referred or walked-in seeking a job[1] and an additional requirement to hire qualified workers up to 50% of the total approved H-2A workforce.[2] According to Plaintiffs, the H-2A regulations also required Mercer Canyons to contact former employees to solicit their return to the job, and to provide copies of the Clearance Order to any domestic worker that completed any corresponding work. Finally, Plaintiffs contend that Mercer Canyons was required to pay $12 per hour for all corresponding vineyard related work.

Allegedly, Plaintiff Amador sought work in-person at Mercer Canyons on March 19, 2013—during the positive recruitment period. Amador was not told of the available $12 per hour vineyard jobs. Plaintiff Ruiz was employed by Mercer Canyons in 2013 and performed vineyard work but claims he was never told of the $12 per hour jobs and was not provided a copy of the Clearance Order.

Plaintiffs seek to prove Mercer Canyons had a practice or policy to intentionally withhold information regarding the $12 per hour jobs from domestic job-seekers and from its own domestic employees. In light of the obligations created by the Clearance Order and H-2A regulations, Plaintiffs believe Mercer Canyons' withholding of such material information constituted false or misleading information, prohibited by § 1821(f) and § 1831(e) of the AWPA, and by the Washington Consumer Protection Act ("CPA"). The harm Plaintiffs allege under § 1821(f) and § 1831(e) is an informational harm and they seek statutory damages pursuant to 29 U.S.C. § 1854(c)(1). Under the CPA, Plaintiffs seek actual

---

[1] February 4 to March 21, 2013.
[2] March 21 to June 15, 2013.

CLASS CERTIFICATION ORDER ~ 2

damages based on the wages earned by foreign H-2A workers and pursuant to RCW 19.86.090.

For the underpayment claims under the AWPA, § 1322(a) & § 1332(a), and Washington state wage laws, RCW 49.52.050(2), Plaintiffs seek to use accounting records to show the aggregate amount domestic workers were underpaid. Plaintiffs deem this approach necessary due to the confusing method Mercer Canyons tracked work.

This matter, Plaintiffs' Motion to Certify Class, ECF No. 51, was heard on March 25, 2015. Plaintiffs were represented by Lori A. Isley and David Solis. Frederick Rivera and Aurora Janke represented Mercer Canyons, Inc.

## PROPOSED CLASS

Bacilio Ruiz Torres and Jose Amador represent a putative Inaccurate Information class including:

All domestic migrant and seasonal farm workers who: 1) were employed as vineyard workers by Mercer Canyons in 2012; 2) sought employment at Mercer Canyons in 2013 between February 4 and June 15, 2013; or 3) performed vineyard work at Mercer Canyons between March 24 and September 15, 2013, and were not referred by WorkSource.[3]

Plaintiffs also propose a subclass of 2013 workers who performed vineyard work between March 24 and September 15, 2013, were paid less than $12 per hour and were not referred by WorkSource. This is the putative Equal Pay class.

Plaintiffs' claims include misleading information claims under the AWPA, 29 U.S.C. § 1821(f) & § 1831(e), and the CPA, as well as failure to pay wages due

---

[3] WorkSource is a statewide partnership of state, local, and non-profit agencies that serves as a job-training and resource center with a location in Sunnyside. WorkSource also provides job referrals to employers, including for Clearance Order positions. WorkSource had its own obligation to inform the job-seekers it referred of the material terms and conditions of employment.

CLASS CERTIFICATION ORDER ~ 3

claims under the AWPA, § 1322(a) & § 1332(a), and under Washington state wage laws. RCW 49.52.050(2).

## STANDARD

Rule 23 of the Federal Rules of Civil Procedure governs the certification of a class. Rule 23(a) requires the party seeking certification to demonstrate:

(1) The class is so numerous that joinder of all members is impracticable;
(2) There are questions of law or fact common to the class;
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23 is not a mere pleading standard, and the requirements of the rule must be found after a "rigorous analysis." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).

In addition to meeting the requirements of Rule 23(a), a proposed class must also satisfy at least one of the subsections of Rule 23(b). As relevant here, Rule 23(b)(3) requires the Court find that common questions of fact or law predominate over any questions that affect only individual members and that class action is better than other methods to efficiently and fairly resolve the controversy.

## ANALYSIS

### Ascertainability

Rule 23 does not explicitly contain a requirement that a class be ascertainable, however, many courts have found ascertainability to be a prerequisite to class certification. *See Carrera v. Bayer Corp.*, 727 F.3d 300 (3rd Cir. 2013); *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097 (N.D. Cal. 2014); *Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567. The proposed class should be definite and ascertainable from objective criteria so that the Court can determine whether a particular individual is a class member or not. *Bayer Corp.*, 727 F.3d at 306; *In re Hulu Privacy Litig.*, 2014 WL 2758598 at *13 (N.D. Cal. 2014).

CLASS CERTIFICATION ORDER ~ 4

Although the criteria for membership in the class must be determined, not all class members need to be ascertained prior to certification. *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726 at *8 (N.D. Cal. 2014).

The proposed class and subclass are sufficiently ascertainable. The Inaccurate Information class consists of all domestic migrant and seasonal farm workers who were employed as vineyard workers by Mercer Canyons in 2012, sought employment at Mercer Canyons in 2013 between February 4 and June 15, 2013, or performed vineyard work at Mercer Canyons between March 24 and September 15, 2013, and were not referred by WorkSource. This class can be determined through employment documents from Mercer Canyons and from the contractor, M & L. The Equal Pay subclass consists of all domestic migrant and seasonal farm workers who performed vineyard work at Mercer Canyons between March 24 and September 15, 2013, were not paid $12 per hour, and were not referred by WorkSource. This subclass can also be ascertained by Mercer Canyons payroll records. Accordingly, both the Inaccurate Information class and the Equal Pay subclass are sufficiently ascertainable.[4]

### 23(a)(1) Numerosity

Rule 23(a)(1) requires a proposed class be so numerous that joinder of all members is impracticable. Impracticability depends on "the facts and circumstances of each case and does not, as a matter of law, require any specific minimum number of class members." *Smith v. Univ. of Wash. Law Sch.*, 2 F.Supp.2d 1324, 1340 (W.D. Wash. 1998). Mercer Canyons appears to concede that the putative class is sufficiently numerous to satisfy Rule 23(a)(1). The Court

---

[4] Mercer Canyons suggests the Equal Pay class is an impermissible "Fail-Safe" class. The Court is convinced that the Equal Pay class, at least as defined by the Plaintiffs in their reply, ECF No. 116 at 9, is not a fail-safe class because the proposed class definition is not framed as a legal conclusion and the definition does not preclude the possibility of an adverse judgment against the class members.

CLASS CERTIFICATION ORDER ~ 5

agrees. The putative class consists of more than 600 identified individuals and the subclass more than 200. Here, Rule 23(a)(1) is satisfied based on the size of the proposed class alone. *See Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982) (finding a class as small as thirty-nine members sufficiently numerous based on size alone).

23(a)(2) Commonality

Rule 23(a)(2) requires there be questions of law or fact common to the class for a proposed class to be certified. At least one common question of "shared legal issues with divergent factual predicates or a common core of salient facts coupled with disparate legal remedies" must exist. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (internal citation omitted). A class meets the commonality requirement when "class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Wolin v. Jaguar Land Rover N. Am., LLC.*, 617 F.3d 1168, 1172 (9th Cir. 2010). Whether the questions are likely to drive the resolution depends on the nature of the claim on the merits.

Plaintiffs argue the common question as to the inaccurate information class is whether Mercer had a consistent practice of failing to tell domestic workers it had $12 per hour work available. Plaintiffs believe this common question goes to both AWPA and Washington CPA issues. As to the equal pay subclass, Plaintiffs suggest a question of whether certain types of work was covered by the Clearance Order and whether Mercer had a practice of willfully withholding wages by failing to pay $12 for that work.

Mercer Canyons argues there are no common questions because each class member will need to show specific and individualized facts as to how he or she was provided misleading information. Mercer Canyons argues it was under no affirmative obligation, either from the AWPA or H-2A regulations, to inform job-seekers of the available work, and therefore, any attempt to show Mercer Canyons

CLASS CERTIFICATION ORDER ~ 6

had a pattern or policy to withhold such information is not sufficient to establish liability as to each class member.

Whether Mercer Canyons had a policy or practice to withhold information pertaining to H-2A jobs from job-seekers and current employees, and if so, whether such withholding constituted providing false or misleading information concerning the existence of, or terms and conditions of, jobs constitute common questions shared by proposed class members regarding the inaccurate information claims under the AWPA and CPA. In other words, Plaintiffs may seek to demonstrate that Mercer Canyons had an obligation to provide information but instead had a policy to purposely avoid that obligation, and Plaintiffs may argue to the jury that the blanket policy of withholding this information from those who sought work was false or misleading.

In *Jimenez v. Allstate Ins. Co.*, the Ninth Circuit upheld class certification based on commonality involving whether "class members *generally* worked overtime without receiving compensation as a result of Defendant's *unofficial policy* of discouraging reporting such overtime." 765 F. 3d 1161, 1164 (9th Cir. 2014) (emphasis added); *see also Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) (finding questions of statewide prison policy constituted requisite commonality for class of prisoners making Eighth Amendment claims). Here, Plaintiffs similarly seek to establish that Defendant's policy or practice raises the common question of whether Mercer Canyons provided false or misleading information to the class. Just as in *Jimenez,* "proving at trial whether such informal or unofficial policies existed will drive the resolution" of that claim. *Id*. at 1166.

As to the underpayment claims, Plaintiffs offer as a common question whether Mercer Canyons had a practice to consistently fail to pay employees $12 for corresponding Clearance Order work. Plaintiffs suggest they will offer proof of underpayment in the aggregate. Because Plaintiffs seek to prove this claim in the aggregate, the questions involved are necessarily common. This common question

CLASS CERTIFICATION ORDER ~ 7

will drive the resolution of both the AWPA and Washington law underpayment claims. The proposed class and subclass present common questions of fact or law in satisfaction of Rule 23(a)(2).

<h3>23(a)(3) Typicality</h3>

Rule 23(a)(3) requires the representative parties have claims or defenses that are typical of the claims or defenses of the class. This rule is permissive and claims are "typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). The test is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Typicality concerns the nature of the claim "of the class representative, and not to the specific facts from which it arose or the relief sought." *Id*. Typicality and commonality requirements are often overlapping. *Wal-Mart*, 131 S.Ct. at 2551 n.5 (2011).

Plaintiffs argue that typicality is met because representative Plaintiffs' claims arise from the same practice or course of conduct as those of the class members. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011). According to Plaintiffs, Amador's inaccurate information claim arises from the same course of conduct as the claims of other class members—namely, the policy of withholding material information regarding H-2A work. Additionally, Plaintiffs allege Ruiz's equal pay claims also arise from Mercer Canyons' course of conduct that was not unique to him—regularly underpaying workers for corresponding work.

Defendants argue that Plaintiffs do not show the named representatives are typical of all class members. Specifically, Mercer Canyons argues that Ruiz's claims are not typical of former employees, who Mercer Canyon would have been

CLASS CERTIFICATION ORDER ~ 8

obligated to inform of H-2A work, and also are not typical of M&L employees who were brought in by a contractor for Mercer Canyons.

The Ninth Circuit is clear that when a policy or practice is at issue that affects all class members, typicality exists. *See Parsons*, 754 F.3d at 685; *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). The policy Plaintiffs allege Mercer Canyons implemented would affect current and former employees alike, as well as job-seekers.

The issue concerning the M&L employees may present additional questions but it does not defeat typicality. Mercer Canyons claims there would be a threshold question of whether M&L and Mercer Canyons are joint employees. Presumably this threshold question would apply to numerous putative class members. Mercer Canyons does not present any law or argument as to how this threshold question defeats typicality, so the argument must be inferred. A declaration by M&L's owner states he was never told about the H-2A application, H-2A positions, or any requirements to pay $12 per hour. Ostensibly, the same alleged policy or practice of withholding or providing misleading information about the $12 per hour jobs would affect M&L and its employees in the same way it affects Amador or Ruiz. The inaccurate information provision in the AWPA also applies to farm labor contractors. 29 U.S.C. § 1831(e). The Plaintiffs may argue Mercer Canyons provided misleading information to M&L, coupled with a causation theory, or could argue a joint employer theory. Regardless, typicality "refers to the nature of the claim . . . and not to the specific facts" and the nature of the claim would appear to be the same even if one additional question would need to be answered. *See Hanon*, 976 F.2d at 508. The Court is satisfied the class representatives meet the typicality requirement of Rule 23.

## 23(a)(4) Adequacy

Rule 23(a)(4) requires that class representatives can adequately represent the proposed class. The test for adequacy is "(1) do the named plaintiffs and their

CLASS CERTIFICATION ORDER ~ 9

counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the entire class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (citing *Hanlon*, 150 F.3d at 1020). Mercer Canyons makes no argument regarding this prerequisite and Plaintiffs' attorneys state there is no evidence of any conflicts, that the attorneys are qualified and experienced, and that the named plaintiffs are prepared to properly think and act on behalf of the entire class. Accordingly, the Court finds the adequacy requirement from Rule 23(a)(4) is met.

### 23(b) Predominance

The class must also satisfy one subsection of Rule 23(b) to be certified. Rule 23(b)(3) states a class may be maintained if:

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

The predominance element of 23(b)(3) overlaps with 23(a)(2) commonality questions, however, the predominance consideration is more demanding, and is particularly concerned with whether the putative class is sufficiently cohesive to justify the class vehicle. *Wolin*, 617 F.3d at 1172. Rule 23(b)(3) concerns the relationship between the common and individual issues and asks if common questions present a significant aspect of the case that can be resolved in a single adjudication rather than on an individual basis. *Hanlon*, 150 F.3d at 1022.

CLASS CERTIFICATION ORDER ~ 10

Here, the common questions predominate over any individual questions as they represent the crux of the liability argument. As to the AWPA inaccurate information claim, the common question of whether Mercer Canyons had a practice or policy to mislead domestic workers about available jobs could possibly satisfy every element of the § 1831(e) claim.

> The CPA claim involves five elements:
> 1) an unfair or deceptive act or practice;
> 2) which occurs in trade or commerce;
> 3) that impacts the public interest;
> 4) which causes injury to the plaintiff; and
> 5) the injury is causally linked to the unfair or deceptive act.

*Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn. 2d 299, 312 (1993). By its own terms, the CPA is particularly well-suited to resolution by common questions. In proving the common questions, Plaintiffs could satisfy the first three elements of a CPA claim.

Mercer Canyons argues that several individual questions are present that defeat predominance. However, these questions nearly all go to the issue of damages rather than liability. Individual issues that may result in different damage findings do not defeat certification. *See Leyva v. Medline Industries Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010). While there may be some individual questions that go to liability, the question of whether Mercer Canyons had a policy to provide misleading information to job-seekers predominates over the exact interaction between individual job-seekers and Mercer Canyons.

Similarly, common questions involving the underpayment claims predominate over any individual questions. Because Plaintiffs seek to prove the underpayment claims aggregately, individual questions pertaining to liability will not exist. Mercer Canyons insists that individual proof would be necessary for

each class member, but any individual questions will likely only exist for any damages determinations.

The Court also finds a class action is superior to other methods for resolving the controversy. First, there is no reason to believe that any class members would seek to pursue individual actions against Mercer Canyons. The cost of pursuing the claims individually could outweigh any potential recovery. Second, there is no other known litigation concerning proposed class members and the defendant concerning the same subject matter. Third, the Eastern District of Washington is an appropriate and convenient forum, as most or all of the events in question occurred within the district. Lastly, there do not appear to be any other major impediments in managing this particular matter as a class action.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiffs' Motion for Class Certification, ECF No. 51, is **GRANTED** as to the inaccurate information claims under the AWPA, 29 U.S.C. § 1821(f) & § 1831(e), and the CPA, and to failure to pay wages due claims under the AWPA, 29 U.S.C. § 1322(a) & § 1332(a), and under Washington state wage laws. RCW 49.52.050(2).

2. The Court certifies the following class pursuant to Rule 23(b)(3) and Rule 23(c):

    All domestic migrant and seasonal farm workers who: 1) were employed as vineyard workers by Mercer Canyons in 2012; 2) sought employment at Mercer Canyons in 2013 between February 4 and June 15, 2013; or 3) performed vineyard work at Mercer Canyons between March 24 and September 15, 2013, and were not referred by WorkSource.

3. The Court certifies the following subclass pursuant to Rule 23(b)(3) and Rule 23(c)(5):

> All domestic and seasonal farm workers who performed vineyard work between March 24 and September 15, 2013 for Mercer Canyons, were paid less than $12 per hour, and were not referred by WorkSource.

4. The Court appoints Lori Isley, Joachim Morrison, and David Solis of Columbia Legal Services and Adam Berger, and Martin Garfinkle of Schroeter Goldmark & Bender as class counsel pursuant to Rule 23(g).

5. The Court designates named Plaintiffs Bacilio Ruiz Torres and Jose Amador as class representatives.

6. Within ten days from the date of this Order, class counsel shall serve and file a proposed Notice to members of the certified class. This Notice shall comply with Rule 23(c)(2)(B).

7. Defendant shall have ten days from service of the proposed Notice to serve and file any objections to the proposed Notice.

8. Class counsel shall serve and file a reply, if any, within five days from service of any objections to the proposed Notice.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 8th day of April 2015.



_____
Stanley A. Bastian
United States District Judge

CLASS CERTIFICATION ORDER ~ 13